# UNITED STATES DISTRICT COURT

EASTERN DISTRICT OF CALIFORNIA

| | |
|---|---|
| QUINNELL JOHNSON,<br><br>　　　　　Plaintiff,<br><br>　　v.<br><br>FERNANDEZ,<br><br>　　　　　Defendant. | Case No.  1:22-cv-01026-BAM (PC)<br><br>ORDER DENYING DEFENDANT'S MOTION TO DISMISS<br>(ECF No. 18)<br><br>ORDER DIRECTING DEFENDANT TO FILE RESPONSIVE PLEADING<br><br>**TWENTY-ONE (21) DAY DEADLINE** |

Plaintiff Quinnell Johnson ("Plaintiff") is a state prisoner proceeding *pro se* and *in forma pauperis* in this civil rights action pursuant to 42 U.S.C. § 1983. This action proceeds on Plaintiff's first amended complaint against Defendant Fernandez for deliberate indifference to conditions of confinement/failure to protect in violation of the Eighth Amendment. All parties have consented to United States Magistrate Judge jurisdiction. (ECF No. 27.)

On January 30, 2023, Defendant Fernandez filed a motion to dismiss. (ECF No. 18.) On February 28, 2023, Plaintiff filed an opposition. (ECF No. 22.) On March 14, 2023, Defendant filed a reply. (ECF No. 24.) The motion to dismiss is deemed submitted. Local Rule 230(l).

**I.    Defendant's Motion to Dismiss**

　　　**A.    Brief Overview of the Case**

In December 2020, Plaintiff tested negative for COVID-19 and his cellmate tested positive. When the cellmate was being returned into Plaintiff's cell, Plaintiff asked Defendant

Fernandez to confirm the test results.  Defendant Fernandez confirmed that Plaintiff tested negative, and the cellmate tested positive.  Defendant Fernandez would not let Plaintiff wait in another location while the positive cellmate was moved to quarantine, but instead forced Plaintiff back into the cell with a COVID-19 positive cellmate.  Plaintiff was given minimal protections, just a cloth mask, while Plaintiff was confined in the cell with his COVID positive inmate.

In the Court's screening, these allegations were found sufficient to find Defendant Fernandez acted with deliberate indifference when he knew of and disregarded an excessive risk to inmate health or safety.  By December 2020, it was common knowledge of the existence of COVID-19, the severity of serious illness, and the ease of transmissibility.  Plaintiff alleges that within days after testing negative, and then being housed with a positive cellmate, Plaintiff tested positive for COVID-19 and became sick.  (ECF No. 13, p. 6.)

**B.     Defendant's Arguments**

Defendant argues that Plaintiff has not pleaded sufficient facts demonstrating deliberate indifference.  Plaintiff does not allege any fact that makes Defendant's conduct more likely than other factors to be the cause of Plaintiff contracting the virus.  Plaintiff and his cellmate housed together in the same cell for approximately 45 hours before learning that the cellmate was COVID positive.  It is likely Plaintiff was living with a COVID positive cellmate for more than two days before he was made to stay in the same cell for another three hours.  Plaintiff asserts it was the final three hours of sharing space with the cellmate, while arrangements were made to move that cellmate to quarantine, that caused him harm.  Plaintiff asserts no facts that would make it reasonable to assume that this small, additional period of time was when the transmission occurred.  The facts alleged in the first amended complaint thus fail to establish a causal connection between Defendant's alleged conduct and Plaintiff's alleged harm.  Plaintiff alleges that he did not test positive until nine days later.[1]

---

[1] However, according to the first amended complaint, Plaintiff alleges on December 10, 2020 he started to "develop many of the telltale symptoms associated with COVID-19 contraction," five days after being forced to cell with the COVID positive cellmate. (ECF No. 11, ¶21.)  Plaintiff alleges he was next tested on December 14, 2020, which came back positive for COVID on December 16, 2020. (*Id.* at ¶¶23, 24.)

2

Defendant also argues he is entitled to qualified immunity.  Plaintiff has failed to establish that the Defendant's actions amount to deliberate indifference, and he is therefore entitled to qualified immunity under the first prong.  There is no current authority establishing that an additional three-hour period, while equipped with a face mask, increases the risk of contracting COVID-19 such that allowing it constitutes deliberate indifference.  Plaintiff's allegations fail on the second prong and Defendant is entitled to qualified immunity.

**C.      Plaintiff's Arguments in Opposition**

The first amended complaint alleges that the COVID positive cellmate was kept in the cell with Plaintiff for "over three hours" after Defendant Fernandez became aware the cellmate was positive.  Defendant knew of the risk of exposure and intentionally disregarded a serious risk to Plaintiff's health by forcing Plaintiff to go back into a cell for over three hours with a COVID positive cellmate.

Defendant argues that because Plaintiff might have already been exposed by the cellmate, it makes it alright for Defendant to extend the period of exposure to a deadly disease.  Defendant intentionally increased Plaintiff's risk of exposure by leaving Plaintiff in a small space with his cellmate for over three hours.  At the pleading stage, Plaintiff does not have to prove the exact moment of contraction of the disease.  Plaintiff has stated enough facts to support an Eighth Amendment violation.

Defendant is not entitled to qualified immunity.  As described, for the first prong, Defendant acted in deliberate indifference, knowing that the cellmate was positive for COVID, and that Plaintiff was negative for COVID, yet forcing Plaintiff to go back into the cell with the cellmate without adequate personal protection equipment.  As to the second prong, any reasonable prison official would know that the law clearly establishes that prisoners have the right to be protected from the heightened exposure to serious, easily communicable diseases.  There does not need to be an "exact" factual match of cases, because the Supreme Court has held that the easiest cases do not arise but still impose liability where actions run contrary to common sense and decency. (ECF No. 22, p. 14.)

///

3

**D.     Defendant's Reply**

Defendant argues that as conceded by the opposition, it would be highly speculative to know the exact second of contraction of COVID.  Plaintiff only speculates that he contracted COVID during the three hours he was confined with the positive testing cellmate.  There were other opportunities for transmission, in the nine succeeding days after December 3 when the cellmate tested positive.  There is no factual allegation plausibly establishing that the three hours with the cellmate is when the transmission occurred.  To the extent that Plaintiff disagrees with the speed of moving the cellmate, that does not state a claim for deliberate indifference.

Defendant is entitled to qualified immunity if Plaintiff fails to allege a constitutional violation.  Plaintiff fails to meet the first prong of *Saucier*.

**II.     Legal Standard**

Rule 12(b)(6) of the Federal Rules of Civil Procedures provides for motions to dismiss for "failure to state a claim upon which relief can be granted." Fed. R. Civ. P. 12(b)(6).  In considering a motion to dismiss pursuant to Federal Rule of Civil Procedure 12(b)(6), the court must accept as true the allegations of the complaint in question, *Erickson v. Pardus*, 551 U.S. 89 (2007), and construe the pleading in the light most favorable to the plaintiff.  *Jenkins v. McKeithen*, 395 U.S. 411, 421 (1969); *Meek v. Cty. of Riverside*, 183 F.3d 962, 965 (9th Cir. 1999).  In ruling on the motion, the court "may generally consider only allegations contained in the pleadings, exhibits attached to the complaint, and matters properly subject to judicial notice." *Outdoor Media Grp., Inc. v. City of Beaumont*, 506 F.3d 895, 899 (9th Cir. 2007) (citation and quotation marks omitted).  The court may also consider documents incorporated by reference into the complaint.  *Van Buskirk v. Cable News Network, Inc.*, 284 F.3d 977, 980 (9th Cir. 2002).

In general, pro se pleadings are held to a less stringent standard than those drafted by lawyers.  *Haines v. Kerner*, 404 U.S. 519, 520 (1972).  The court has an obligation to construe such pleadings liberally.  *Bretz v. Kelman*, 773 F.2d 1026, 1027 n.1 (9th Cir. 1985) (en banc).  However, a court's liberal interpretation of a pro se complaint may not supply essential elements of the claim that were not pleaded.  *Ivey v. Bd. of Regents of Univ. of Alaska,* 673 F.2d 266, 268 (9th Cir. 1982).  Also, the Court need not credit "naked assertions," "labels and conclusions" or

"a formulaic recitation of the elements of a cause of action." *See Bell Atlantic Corp. v. Twombly*, 550 U.S. 544, 555–57 (2007).

**III.    Discussion**

    **A.    Deliberate Indifference to Conditions of Confinement/Failure to Protect**

Defendant challenges the causal connection between Plaintiff's contraction of COVID-19 and the exposure by the cellmate. Defendant challenges the sufficiency of the factual allegations and argues that there is no precise way to show that Plaintiff contracted COVID-19 as a result of Defendant forcing Plaintiff to remain in the cell for the three-hour exposure to his cellmate. Defendant argues the facts alleged in the first amended complaint thus fail to establish a causal connection between Defendant's alleged conduct and Plaintiff's alleged harm.

Two requirements must be met to show an Eighth Amendment violation. *Farmer v. Brennan*, 511 U.S. 825, 834 (1994). "First, the deprivation must be, objectively, sufficiently serious." *Id.* (internal quotation marks and citation omitted). Second, "prison officials must have a sufficiently culpable state of mind," which for conditions of confinement claims, "is one of deliberate indifference." *Id.* (internal quotation marks and citation omitted). Prison officials act with deliberate indifference when they know of and disregard an excessive risk to inmate health or safety. *Id.* at 837. The circumstances, nature, and duration of the deprivations are critical in determining whether the conditions complained of are grave enough to form the basis of a viable Eighth Amendment claim. *Johnson v. Lewis*, 217 F.3d 726, 731 (9th Cir. 2006). Mere negligence on the part of a prison official is not sufficient to establish liability, but rather, the official's conduct must have been wanton. *Farmer*, 511 U.S. at 835; *Frost v. Agnos*, 152 F.3d 1124, 1128 (9th Cir. 1998). Thus, a prison official may be held liable under the Eighth Amendment for denying humane conditions of confinement only if he knows that inmates face a substantial risk of harm and disregards that risk by failing to take reasonable measures to abate it. *Id.* at 837–45.

Defendant does not challenge the objective prong, as the Court held in its screening order, that COVID-19 posed, in December 2020, a substantial risk of serious harm and that the transmissibility of the COVID-19 virus in conjunction with Plaintiff's living conditions, in which

1 he alleges he was placed in a cell with a COVID-19 positive cellmate, are sufficient to satisfy the
2 objective prong, i.e., that Plaintiff was "incarcerated under conditions posing a substantial risk of
3 serious harm."   (ECF No. 13, pp. 5–6.)

4      Indeed, Defendant does not challenge that Plaintiff has sufficiently alleged that Fernandez
5 knew of the risk to Plaintiff and disregarded that risk.  Plaintiff alleges that Fernandez knew that
6 Plaintiff tested negative for COVID-19 while his cellmate tested positive, because it was
7 Fernandez who informed Plaintiff of the test results.  Plaintiff alleges that Defendant Fernandez
8 would not let Plaintiff wait at another location while the inmate was moved to quarantine, but
9 instead forced Plaintiff back into the cell with the cellmate.  The Court's screening order held
10 that, "[t]hese allegations are sufficient to find Defendant Fernandez acted with deliberate
11 indifference when he knew of and disregarded an excessive risk to inmate health or safety.  By
12 December 2020, it was common knowledge of the existence of COVID-19, the severity of serious
13 illness, and the ease of transmissibility.  Plaintiff alleges that within days after testing negative,
14 then housed with a positive cellmate, Plaintiff tested positive for COVID-19 and became sick."
15 (ECF No. 13, p. 6.)

16      Instead, Defendant argues that Plaintiff cannot prove the causal connection of the precise
17 moment Plaintiff was infected and thus cannot show that Defendant's conduct is responsible for
18 the contraction of COVID-19.  While Defendant's argument is couched in terms of "failure to
19 allege facts," the argument is in fact challenging the sufficiency of the evidence for causation.
20 When considering a Rule 12(b)(6) motion to dismiss, the Court must "accept all allegations of
21 material fact in the complaint as true and construe them in the light most favorable to the non-
22 moving party." *Cedars-Sinai Med. Ctr. v. Nat'l League of Postmasters*, 497 F.3d 972, 975 (9th
23 Cir. 2007).

24      Here, Plaintiff adequately alleged that being confined in the cell was the cause of
25 contracting COVID-19.  *Leer v. Murphy*, 844 F.2d 628, 633 (9th Cir. 1988) ("The inquiry into
26 causation must be individualized and focus on the duties and responsibilities of each individual
27 defendant whose acts or omissions are alleged to have caused a constitutional deprivation.")
28 Plaintiff has alleged that five days after exposure, he began feeling the symptoms of COVID-19

and became ill.  (ECF No. 11, p. 6.)  Whether or not Plaintiff will be able to prove how he contracted COVID-19 is not an appropriate issue for decision on a Rule 12(b)(6) motion.  Causation in this case is ultimately a question for the finder of fact to decide.  *See Soo Park v. Thompson*, 851 F.3d 910, 922 (9th Cir. 2017) (citing *Farr v. NC Mach. Co.*, 186 F.3d 1165, 1171 (9th Cir. 1999) ("As the Supreme Court emphasized, '[t]he issues of proximate causation and superseding cause involve application of law to fact, which is left to the factfinder, subject to limited review.' ") (quoting *Exxon Co., U.S.A. v. Sofec, Inc.,* 517 U.S. 830, 840–41 (1996)).)  A reasonable inference from the allegations is that exposure in a confined space could result in contraction of the disease.  *See Doe v. United States*, 419 F.3d 1058, 1062 (9th Cir. 2005) (When evaluating a Rule 12(b)(6) motion, a court must accept all material allegations in the complaint—as well as any reasonable inferences to be drawn from them—as true and construe them in the light most favorable to the non-moving party.)  The allegations are sufficient at the pleading stage to state a causal connection.  *Arpin v. Santa Clara Valley Transp. Agency*, 261 F.3d 912, 923 (9th Cir. 2001) ("A dismissal for failure to state a claim is proper only if it appears beyond doubt that the plaintiff can prove no set of facts in support of his claim which would entitle him to relief.")

### B.     **Qualified Immunity**

Defendant argues that he is entitled to qualified immunity.

"Government officials enjoy qualified immunity from civil damages unless their conduct violates 'clearly established statutory or constitutional rights of which a reasonable person would have known.' " *Jeffers v. Gomez*, 267 F.3d 895, 910 (9th Cir. 2001) (quoting *Harlow v. Fitzgerald*, 457 U.S. 800, 818 (1982)).  When presented with a qualified immunity defense, the central questions for the court are: (1) whether the facts alleged, taken in the light most favorable to the plaintiff, demonstrate that the defendants conduct violated a statutory or constitutional right; and (2) whether the right at issue was "clearly established" at the time it is alleged to have been violated.  *Saucier v. Katz*, 533 U.S. 194, 201 (2001), *overruled in part on other grounds by Pearson v. Callahan*, 555 U.S. 223 (2009).

A right is "clearly established" when its bounds are "sufficiently clear that a reasonable official would understand that what he is doing violates that right." *Saucier*, 533 U.S. at 202. The

7

1  Supreme Court does "not require a case directly on point, but existing precedent must have placed
2  the statutory or constitutional question beyond debate." *Ashcroft v. al-Kidd*, 563 U.S. 731, 741
3  (2011).  Indeed, "in an obvious case, [highly generalized] standards can 'clearly establish' the
4  answer, even without a body of relevant case law." *Brosseau v. Haugen*, 543 U.S. 194, 199
5  (2004).

6  The Ninth Circuit has found that "[d]etermining claims of qualified immunity at the
7  motion-to-dismiss stage raises special problems for legal decision making." *Keates v. Koile*, 883
8  F.3d 1228, 1234 (9th Cir. 2018).  A motion to dismiss based on qualified immunity requires the
9  court "to decide these weighty questions aided only by the skeletal—at best—factual picture
10 sketched out in the complaint." *Wong v. United States*, 373 F.3d 952, 956 (9th Cir. 2004),
11 *overruled in part on other grounds*, *Wilkie v. Robbins*, 551 U.S 537 (2007).  "When, as here,
12 defendants assert qualified immunity in a motion to dismiss under Rule 12(b)(6), dismissal is not
13 appropriate unless we can determine, based on the complaint itself, that qualified immunity
14 applies." *O'Brien v. Welty*, 818 F.3d 920, 936 (9th Cir. 2016) (quotations omitted); *see also*
15 *Keates*, 883 F.3d at 1235 ("[O]ur decision at the motion-to-dismiss stage sheds little light on
16 whether the government actors might ultimately be entitled to qualified immunity 'were the case
17 permitted to proceed, at least to the summary judgment stage' and the court is presented with
18 facts providing context for the challenged actions."  (citation omitted)).

19 Qualified immunity is a fact-intensive determination.  *See Saucier*, 533 U.S. at 201.  The
20 cornerstone of the qualified immunity analysis is the reasonableness of the official's conduct.  *See*
21 *Rosenbaum v. Washoe Cty.*, 663 F.3d 1071, 1075–76 (9th Cir. 2011) ("The linchpin of qualified
22 immunity is the reasonableness of the official's conduct."); *Anderson v. Creighton*, 483 U.S. 635,
23 638–39 (1987) ("[W]hether an official protected by qualified immunity may be held personally
24 liable for an allegedly unlawful official action generally turns on the objective legal
25 reasonableness of the action, assessed in light of the legal rules that were clearly established at the
26 time it was taken." (internal quotation marks and citations omitted)).

27 As shown above, the facts alleged, taken in the light most favorable to Plaintiff,
28 demonstrate that Defendant's conduct raises factual issues regarding violating a constitutional

8

right. Taking the Plaintiff's allegations as true at the pleading stage, a reasonable officer could infer that placing Plaintiff in a cell with a COVID positive cellmate, given the known ease of communicability in December 2020, would subject Plaintiff to a substantial risk of harm. Given the factual inquiry necessary for qualified immunity, the Court cannot determine this issue at this time. *Brown v. Grove*, 647 F. Supp. 2d 1178, 1183 (C.D. Cal. 2009) ("fact-intensive issues pertinent to a qualified immunity defense, particularly whether the defendant's conduct was reasonable, are better left to summary judgment") (citation omitted).

## IV. Order

For the foregoing reasons, IT IS HEREBY ORDERED as follows:

1. Defendant Fernandez's Motion to Dismiss, (ECF No. 18), is DENIED; and
2. Defendant Fernandez SHALL FILE an answer to Plaintiff's first amended complaint within **twenty-one (21) days** from the date of service of this order.

IT IS SO ORDERED.

Dated: **July 17, 2023**         /s/ *Barbara A. McAuliffe*
                                 UNITED STATES MAGISTRATE JUDGE